## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO.  3:20-CV-424-BJB-CHL

VICTOR HARDY,                                                                    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                                   Defendant.

### REPORT AND RECOMMENDATION

Before the Court is the Complaint (DN 1) of Plaintiff Victor Hardy ("Hardy"), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). *See* 42 U.S.C. § 405(g).  On December 21, 2020, Hardy filed his Fact and Law Summary (DN 13), and in response, on February 16, 2021, the Commissioner filed his Fact and Law Summary (DN 18).  This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation.  Therefore, this matter is ripe for review.

## I.      FINDINGS OF FACT

On November 8, 2017, Hardy filed an application for Supplemental Security Income Benefits ("SSI").  (DN 9, at PageID # 167.)  Hardy claimed that he was disabled as of October 16, 2017 due to mental issues, learning disability, attention deficit hyperactive disorder ("ADHD"), depression, and suicidality.  (*Id.*, at PageID # 242, 263.)  Hardy's application was denied initially on March 5, 2018, and on April 10, 2018, Hardy's application was again denied on reconsideration.  (*Id.*, at PageID # 166, 182-83.)  An Administrative Law Judge ("ALJ") conducted a hearing on Hardy's application on April 30, 2019.  (*Id.*, at PageID # 101-141.)  During the hearing, the ALJ heard testimony from Hardy, who was assisted by counsel, as well as vocational expert Linda Jones.  (*Id.*)  In a decision dated July 3, 2019, the ALJ engaged in the five-step evaluation process

promulgated by the Commissioner to determine whether an individual is disabled, and in doing so, made the following findings:

1. The claimant has not engaged in substantial gainful activity since November 8, 2017, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: personality disorder and neurodevelopmental disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple oral instructions and perform simple tasks with short demonstrations. He can interact appropriately with supervisors occasionally, and with coworkers occasionally when limited to jobs that are not in tandem. He should not be required to interact with the public for task completion. He can maintain attention for two-hour segments throughout an eight-hour workday and tolerate routine changes. He should not be required to do math calculations.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on September 27, 1983 and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was Fried (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in

significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since November 8, 2017, the date the application was filed (20 CFR 416.920(g)).

(*Id.*, at PageID # 51-58.)

Hardy filed a request for review, and on May 3, 2020, the Appeals Council denied his request, at which point the ALJ's decision became the final decision of the Commissioner.  (*Id.*, at PageID # 37-39.)  On June 12, 2020, Hardy timely filed this action.  (DN 1.)

## II.     CONCLUSIONS OF LAW

The Social Security Act authorizes payment of supplemental social security benefits to persons with disabilities.  Social Security Act, Supplemental Social Security Income, 42 U.S.C. §§ 1381-85.  An individual shall be considered disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

### A.  Standard of Review

The Court may review the final decision of the Commissioner; however, the Court may only consider whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" is "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see also Smith*

*v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the Court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes a lack of substantial evidence, even where the Commissioner's decision can be justified by the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**B. Five Step Sequential Evaluation Process**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. § 416.920. In summary, the evaluation process proceeds as follows:

> (1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.
>
> (2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "yes," the claimant is disabled. If the answer is "no," procced to the next step.
>
> (3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.
>
> (4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.
>
> (5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

*Id.*  The claimant bears the burden of proof with respect to steps one through four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden only shifts to the Commissioner at step five to prove the availability of other work in the national economy that the claimant is capable of performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F. 3d 417, 423 (6th Cir. 2008).  The claimant always retains the burden of proving lack of RFC.  *Id.*; *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.  The ALJ's Findings

Below, the undersigned summarizes the ALJ's findings with respect to the issues raised in Hardy's Fact and Law Summary (DN 13).

### 1.  The ALJ Found that Hardy Did not Meet Listing 12.08

At step three of the five-step sequential process, a claimant will be found disabled if his impairment meets or medically equals one of the listings in the Listing of Impairments.  20 C.F.R. § 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010).  The Listing of Impairments, set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 416.925(a).  Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing."  20 C.F.R. § 416.925(c)(3).  An ALJ will find that an impairment "*meets* the requirements of a listing when it satisfies all the criteria of that listing."  20 C.F.R. § 416.925(c)(3) (emphasis in original); *see Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1984).

The severity requirements for Listing 12.08 is set forth in paragraph "B" of the listing.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00A.  The paragraph "B" criteria are: "1. Understand,

remember, or apply information (paragraph B1)"; "2. Interact with others (paragraph B2)"; "3. Concentrate, persist, or maintain pace (paragraph B3)"; and "4. Adapt or manage oneself (paragraph B4)".  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E1-4.  These four areas of mental functioning are evaluated on a five-point rating scale:

> **1.** No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.
>
> **2.** Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.
>
> **3.** Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
>
> **4.** Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
>
> **5.** Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2a-e.

To satisfy the paragraph "B" criteria for Listing 12.08, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2, Listing 12.08 Personality and impulse-control disorders.

An ALJ will find that an impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 404.1526(a). Medical equivalence can be found in one of three ways:

(1) (i) If [the claimant has] an impairment that is described in appendix 1, but —

(A) [the claimant does] not exhibit one or more of the findings specified in the particular listing, or

(B) [the claimant] exhibit[s] all of the findings, but one or more of the findings is not as severe as specified in the particular listing,

(ii) [The ALJ] will find that [the claimant's] impairment is medically equivalent to that listing if [the claimant has] other findings related to [the claimant's] impairment that are at least of equal medical significance to the required criteria.

(2) If [claimant has] an impairment(s) that is not described in appendix 1, [the ALJ] will compare [claimant's] findings with those for closely analogous listed impairments. If the findings related to [claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the ALJ] will find that [claimant's] impairment(s) is medically equivalent to the analogous listing.

(3) If [claimant has] a combination of impairments, no one of which meets a listing [ ], [the ALJ] will compare [claimant's] findings with those for closely analogous listed impairments. If the findings related to [claimant's] impairments are at least of equal medical significance to those of a listed impairment, [the ALJ] will find that [claimant's] combination of impairments is medically equivalent . . . .

20 C.F.R. § 416.926(b); Social Security Ruling ("SSR") 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017) (summary of the three ways the Social Security Administration can find medical equivalence).

Here, the ALJ found that Hardy had no more than a moderate limitation in all four paragraph "B" criteria. (DN 9, at PageID # 53-54.) When evaluating Hardy's understanding, remembering, or applying information, the ALJ stated that "the records in file demonstrate he is able to understand and respond appropriately to instructions and/or questions." (*Id.*, at PageID # 54.) In reaching this conclusion, the ALJ noted that Hardy testified at the hearing that he only has a third-grade education but had earlier reported having a fifth-grade education, and other records indicated that he had a tenth-grade education. (*Id.*) The ALJ also considered that testing from 2010 showed that Hardy had a full scale IQ score of 69 with higher verbal and performance scores and concluded that the scores may be unreliably low because of the "strong possibility he did not apply himself well." (*Id.*)

Next, the ALJ found Hardy's ability to interact with others was moderately limited because, despite his alleged behavioral problems and difficulty interacting with others, he interacts with acquaintances, acted appropriately toward medical providers, and was cooperative with the ALJ during the hearing.  (*Id.*)  The ALJ also noted that Hardy's "legal history is limited to theft and drug abuse, not violent behavior." (*Id.*)  Third, in evaluating Hardy's ability to concentrate, persist, or maintain pace, the ALJ found no more than a moderate limitation because the record showed no treatment or diagnostic history for Hardy's alleged ADHD and that Hardy is able to perform self-care, interact with others, and participate in therapy sessions.  (*Id.*)

Finally, the ALJ found that Hardy's ability to adapt or manage himself is no more than moderately limited.  (*Id.*)  The ALJ considered Hardy's assertions that he has difficulty interacting and adjusting due to anger issues and found this testimony inconsistent with Hardy's limited attempts at treatment, lack of motivation, and general noncompliance with treatment.  (*Id.*)  The ALJ relied on the opinions of state agency evaluators that Hardy would have no significant limitations except being moderately limited in accommodating workplace changes.  (*Id.*)  Based on the foregoing, the ALJ concluded that "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." (*Id.*)

## 2. The ALJ Found that Hardy's RFC Enabled Him to Perform Work with Nonexertional Limitations

The residual functional capacity finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.  20 C.F.R. §§ 416.945(a), 416.946(c).  The ALJ makes this finding based on a consideration of medical source statements and all other evidence in the case record.  20 C.F.R. §§ 416.929, 416.945(a), 416.946(c).  In

assessing a claimant's RFC, an ALJ must necessarily consider the subjective allegations of the claimant and make findings.  20 C.F.R. § 416.1529; SSR 16-3p.  A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged.  20 C.F.R. § 416.1529(a).

In determining whether a claimant suffers from debilitating pain and/or other symptoms, the two-part test set forth in *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986), applies.  First, the ALJ must examine whether there is objective medical evidence of an underlying medical condition.  If there is, then the ALJ must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." *Id.*  When, as in this case, the reported pain and/or other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the ALJ will consider other information and factors which may be relevant to the degree of severity alleged.  20 C.F.R. § 416.1529(c)(3).

Here, at the ALJ found that Hardy's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Hardy's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  (DN 9, at PageID # 56.)  First, the ALJ found that Hardy's own statements the intensity, persistence, and limiting effects of his symptoms were inconsistent.  (*Id.*, at PageID # 56-57.)  The ALJ noted that Hardy was not undergoing any mental health treatment and had refused prescribed medication for his mental

health.  (*Id.*, at PageID # 57.)  The ALJ also noted that Hardy has stated at different points that he has a third-grade education and that he has completed tenth grade and that Hardy "has stated in the record that he has no difficulty reading or writing, and he has stated that he is illiterate."  (*Id.*)

Turning to the medical evidence in the record, the ALJ noted that when he was evaluated in 2010 by psychologist Dr. Wayne Herner ("Dr. Herner"), Hardy obtained a full scale IQ score of 69, suggesting borderline intelligence, but also showed indications of malingering in performing the Rey Memorization of 15-Item Test ("Rey Test").  (*Id.*, at PageID # 56.)  The ALJ noted that despite reports of depression, evaluations in 2011 and 2013 showed that his mental status was in normal limits.  (*Id.*)  The ALJ noted that in October 2017, Hardy was evaluated for treatment at Cornerstone, a psychological treatment facility, and reported anxiety, depression, and anger, but that despite being referred for therapy and medication management, Hardy did not return until February 2018.  (*Id.*)  The ALJ observed that Hardy attended a few therapy treatments before being discharged for ceasing contact for three months.  (*Id.*)

Regarding medical opinions in the record, the ALJ noted a 2015 consultative evaluation by Dr. Brandon Dennis ("Dr. Dennis") concluded that Hardy would have extreme difficulty conforming to workplace and community standards, and assigned the opinion "little weight" because it was "based on the claimant's reporting rather than objective evidence."  (*Id.*)  The ALJ also noted a 2018 evaluation by Dr. Dennis concluding that Hardy had extreme limitations to his social interactions and assigned the opinion "little weight" "given the very limited scope of this examination and its contradictions to other psychological reports."  (*Id.*, at PageId # 57.)  The ALJ later stated that "neither of Dr. Dennis's examinations are given weight."  (*Id.*)

The ALJ found that Dr. Herner's 2010 examination was "extremely thorough" and included "extensive testing" and this determined that Dr. Herner's evaluation would be "given

weight for the clinical value of his findings, though he did not opine as to the claimant's limitations." (*Id.*)  Finally, the ALJ concluded that "[t]he State agency is given significant weight for their most recent assessment, which is consistent with the overall treatment record as well as with the more thorough examinations in the record." (*Id.*)  Based on the foregoing, the ALJ found that Hardy:

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple oral instructions and perform simple tasks with short demonstrations. He can interact appropriately with supervisors occasionally, and with coworkers occasionally when limited to jobs that are not in tandem. He should not be required to interact with the public for task completion. He can maintain attention for two-hour segments throughout an eight-hour workday and tolerate routine changes. He should not be required to do math calculations.

(*Id.*, at PageID # 55.)

### D.  Hardy's Contentions

Hardy contends that the ALJ erred at steps three, four, and five of the five-step sequential evaluation.  (DN 13, at PageID # 870-83.)  Specifically, Hardy objects the ALJ's finding that his mental impairment does not meet or medically equal a Personality and Impulse-control Disorder under Listing 12.08 within 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*, at PageID # 870-80.)  Hardy also objects to the ALJ's finding that Hardy's RFC includes sustaining an eight-hour workday five days per week interacting with supervisors, coworkers, and the public.  (*Id.*, at PageID # 880-82.)  Finally, Hardy objects to the ALJ's finding that there are a significant number of jobs in the national economy that Hardy can perform and that Hardy is therefore not disabled.  (*Id.*, at PageID # 883.)  Hardy argues that the ALJ committed several specific errors, most significantly in weighing the medical opinion evidence and also in failing to properly consider the

full range of evidence in the record.  (*Id.*, at PageID # 870-80.)  Hardy's arguments are addressed below.

### 1.  Medical Opinion Evidence

The new regulations for evaluating medical opinions are applicable to Hardy's case because he filed his application after March 27, 2017.  (DN 9, at PageID # 167.)  *See* 20 C.F.R. § 416.920c.  The new regulation explicitly provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record, even if it comes from a treating medical source.  20 C.F.R. § 416.920c(a).  Instead, administrative law judges will now evaluate the "persuasiveness" of medical opinions by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.  20 C.F.R. § 416.920c(a)-(b).  The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 416.920c(c)(1)-(5).  Of these five factors, the two most important are supportability and consistency.  20 C.F.R. § 416.920c(a) and (b)(2).  Further, the regulation requires administrative law judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Notably, under the regulation administrative law judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Additionally, administrative law judges "must consider" medical findings of non-examining state agency medical or psychological consultants according to the new regulation.  20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

An administrative law judge will articulate how she considered the other factors in paragraphs (c)(3) through (c)(5) of the regulation when the administrative law judge finds that two

or more medical opinions about the same issue are both equally well supported and consistent with the record but are not exactly the same.  20 C.F.R. § 416.920c(b)(3).

On November 3, 2015, Dr. Dennis conducted a consultative examination of Hardy.  (DN 9, at PageID # 592-98.)  The examination included Dr. Dennis' observations, Hardy's self-reported personal and medical history, a sensorium and mental capacity evaluation, and Hardy's self-reported activities of daily life.  (*Id.*, at PageID # 593-95.)  Based on the information collected during the examination, Dr. Dennis concluded that Hardy "meets criteria for Intermittent Explosive Disorder and Antisocial Personality Disorder."  (*Id.*, at PageID # 595.)  Dr. Dennis stated that the prognosis was "prognosis is guarded to poor" and that Hardy was expected to "have extreme difficulty conforming to workplace and community standards." (*Id.*)  Dr. Dennis provided the following medical source statement:

> [I]t appears Mr. Hardy can understand and remember one and two stage instructions with moderate difficulty. His capacity to sustain attention to complete tasks is moderately limited. Social interaction appears extremely limited. His ability to accept supervision and get along with co-workers is probably extremely limited. His overall capacity to adapt to pressures of normal daily work activity is believed to be extremely limited.

(*Id.*)  Dr. Dennis also concluded that Hardy's intellectual, impulsivity, and behavioral issues would likely prevent him from managing benefits in his best interest and recommended his mother as the payee.  (*Id.*, at PageID # 596.)

On February 21, 2018, Dr. Dennis conducted another consultative examination of Hardy. (*Id.*, at PageID # 656-60.)  Dr. Dennis used the same criteria included in the 2015 examination and concluded that "[i]ntellectual capability seems quite limited though with his functional status I think he most appropriately meets criteria for a Borderline Intellectual Functioning diagnosis." (*Id.*, at PageID # 658.)  He further concluded that "[t]here is a long history of behavioral problems

13

and mood disturbance, but it is not clear that he meets full criteria for any particular mood disorder." (*Id.*, at PageID # 558-59.) Dr. Dennis state that the "prognosis appears guarded." (*Id.*, at PageID # 659.) Dr. Dennis provided the following medical source statement:

> [T]his claimant would be expected to have moderate limitation for understanding, retaining, and carrying out one-two step and complex instructions. He could be expected to sustain concentration and persist in work-related activity at a reasonable pace with marked limitation. He would be expected to have extreme limitation in his ability to maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the general public. His ability to tolerate the stress and pressure of daily work activity in a competitive setting is probably markedly to extremely limited overall.

(*Id.*) Dr. Dennis also concluded that Hardy's intellectual functioning and behavioral history indicated that designating a payee would be in his best interest. (*Id.*)

Hardy argues that the ALJ erred in failing to evaluate the opinions of Dr. Dennis as a part of the longitudinal evidence relevant to determining whether Hardy's mental impairment met Listing 12.08. (DN 13, at PageID # 874-79.) Hardy asserts that the ALJ's failure to consider Dr. Dennis's evaluations at step three was improper because Dr. Dennis's finding of an extreme limitation to Hardy's ability to interact with others was consistent with other medical evidence in the record. (*Id.*, at PageID # 874.) Without conceding that the ALJ failed to consider all relevant medical evidence at step three, the Commissioner notes that the ALJ considered and assigned little weight to Dr. Dennis's evaluations at step five. (DN 18, at PageID # 901.) The Commissioner further notes that at step five the ALJ considered and assigned significant weight to the opinions of the state reviewing psychologists in making the RFC determination and that the same psychologists also found that Hardy did not have any marked or extreme limitations in any paragraph "B" criteria. (*Id.*) The Commissioner argues that ALJ's decision should be considered as a whole, especially considering that "[c]ourts have been reluctant to impose a strict articulation

standard on the adjudicator at Step Three of the sequential evaluation." (*Id.*, at PageID # 898, 901.)

The undersigned finds that the ALJ did not err in omitting an articulation of how she weighed different medical opinions in the record at step three because the ALJ provided such an articulation in her step five analysis. *See* 20 C.F.R. § 416.920c(b)(1) ("[I]t is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions . . . Instead . . . we will articulate how we considered the medical opinions . . . together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.") Rather, the question of whether the ALJ's step three analysis properly considered the medical opinion evidence in the record will depend on whether the ALJ's evaluation of these opinions at step five was supported by substantial evidence. *See generally Forrest v. Comm'r of Soc. Sec.*, 591 Fed.Appx. 359, 365-66 (6th Cir. 2014) (finding that the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three); *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step three medical equivalency determination).

Hardy argues that the reasons the ALJ cited in rejecting Dr. Dennis's evaluations—that they were based on limited testing, were not based on objective evidence, and were inconsistent with other psychological reports—were unsupported. (DN 13, at PageID # 875-81.) First, Hardy notes that in reviewing the report of a consultative examination, the ALJ is required to consider the factors set forth in 20 C.F.R. § 404.1519p, which includes "[w]hether this is an adequate report of examination as compared to standards set out in the course of a medical education." (*Id.*, at

PageID # 875.)  Hardy argues that the ALJ's assertion that Dr. Dennis's examinations were limited in scope does not indicate a specific error in his methodology.  (*Id.*)

Next, Hardy points out that the ALJ did not identify which psychological report she believed was inconsistent with Dr. Dennis's evaluations.  (*Id.*, at PageID # 875.)  Hardy argues that Dr. Dennis's opinions regarding Hardy's functional limitations were not contradicted by Dr. Herner's evaluation because, as the ALJ recognized, Dr. Herner did not state conclusions with respect to functional limitation.  (*Id.*, at PageID # 876.)  Hardy notes that both Dr. Dennis's evaluations and Dr. Herner's evaluation came to the same findings regarding Hardy's "significant antisocial history, he did not adjust well to prison having spent a great deal of time in segregation, he was irritable and angered easily, has no regard for others and a poor employment history." (*Id.*, at PageID # 878.)  Harder further argues that Dr. Dennis's finding of extreme functional limitations are consistent with other evidence in the record, including the 2010 evaluation by Dr. Samina Juneja and Cornerstone records from 2017 and 2018, all of which document the extent of Hardy's functioning.  (*Id.*, at PageID # 879.)

Finally, Hardy argues that the ALJ did not explain how Dr. Dennis's examinations of Hardy did not produce "objective evidence."  (*Id.*, at PageID # 875-76.)  Hardy notes that in both examinations, Dr. Dennis "did take a history, made observations, evaluated his activities of daily living, denoted his current manifestations of his mental disorder, and administered psychological testing." (*Id.*, at PageID # 875.)  Hardy asserts that it is unclear what the ALJ considers to be objective evidence, noting that Dr. Herner's findings, to which the ALJ assigned weight, were based on Hardy's written responses to written questions.  (*Id.*, at PageID # 876.)  Hardy also notes that the Sixth Circuit has previously found that phycological examinations can constitute objective evidence.  (*Id.*)

In response, the Commissioner argues that the ALJ's decision not to adopt the functional limitations found in Dr. Dennis's 2015 evaluation was supported because, as the ALJ found, the evaluation "was based on Plaintiff's reporting rather than being consistent with or supported by the objective evidence." (DN 18, at PageID # 907.) The Commissioner notes that in assessing Dr. Dennis's 2015 evaluation, the ALJ observed that Hardy did not undergo any mental health treatment over the following two years. (*Id.*) The Commissioner argues that "[t]he lack of visits logically meant there were no findings to support the consultative examiner's extreme conclusions." (*Id.*) The Commissioner further argues that the ALJ's decision not to adopt the functional limitations found in Dr. Dennis's 2018 evaluation was supported because the evaluation was inconsistent with other medical records showing Hardy with normal mental status and inconsistent with Dr. Herner's evaluation "showing borderline intellectual functioning, and of the Rey test, the results of which were below average and suggested that Plaintiff was malingering and offering poor effort." (*Id.*, at PageID # 908.)

The undersigned finds that the ALJ's explanation for the weight assigned to Dr. Dennis's opinions is not supported by substantial evidence in the record and does not comport with applicable law. The undersigned notes that at different points in the decision, the ALJ states both that Dr. Dennis's evaluations were given "little weight" and were not given weight. (*See* DN 9, at PageID # 56-57.)

With regard to supportability, the *Blankenship v. Bowen*, 874 F.2d 1116 (6th Cir.1989), opinion is instructive when the plaintiff claims disability due to mental illness. In *Blankenship*, the ALJ had discounted the opinion of a psychiatrist, reasoning that the psychiatrist had examined the plaintiff only once, that there was no clear diagnostic picture and that the plaintiff's complaints were inconsistent with documented clinical findings. *Id.* at 1121. Rejecting this analysis, the court

noted that it is not uncommon for mental disorders to be diagnosed after one interview. *Id.* The court additionally disputed that medical evidence contradicted the psychiatrist's opinion and emphasized that the psychiatrist had relied upon the type of medical findings that are relevant for diagnosing mental illnesses. *Id.* at 1121.

> [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Id.* (citation and internal quotation marks omitted).

The ALJ's explanation of how she considered the supportability factor in assessing Dr. Dennis's 2015 evaluation consists of the following sentence: "Dr. Dennis did very limited testing, and his evaluation was based primarily on the claimant's response to questions." (*Id.*, at PageID # 56.) Similarly, with respect to Dr. Dennis's 2018 evaluation, the ALJ's explanation merely noted that the examination "was very limited in scope, largely asking the claimant what his symptoms were." (*Id.*, at PageID # 57.) These explanations fail to account for the fact that sound mental health diagnoses often rely on this exact methodology. *Blankenship*, 874 F.2d at 1121. *See Warford v. Astrue*, No. CIV.A 09–52–GWU, 2010 WL 3190756, at *6 (E.D.Ky. Aug.11, 2010) (finding that "interviews are clearly an acceptable diagnostic technique in the area of mental impairments and [an examining psychologist] could rely upon the subjective complaints elicited during the interview in formulating his functional restrictions. Therefore . . . the examiner's opinion was improperly rejected by the ALJ.") Dr. Dennis also addressed Hardy's sincerity during the 2015 examination, concluding in the evaluation that the reliability of the information Hardy provided was "[g]ood" and that Hardy "appeared to invest sufficient effort to produce a valid

examination." (DN 9, at PageID # 593, 595.)  Additionally, the ALJ did not explain why Dr. Dennis's examinations were too limited in scope to produce supportable opinions.  *See Woods v. Colvin*, No. CV 14-14932, 2016 WL 375222, at *3 (E.D. Mich. Jan. 7, 2016), report and recommendation adopted, No. 14-CV-14932, 2016 WL 337463 (E.D. Mich. Jan. 28, 2016) (finding that the ALJ erred in giving little weight to medical source statement of examining psychologist based on general observations during the examination, the results of a mental status examination, and the claimant's self-reported symptoms, treatment, medication, personal history, daily and social functioning, past and present interests, and activities.)  It was therefore erroneous for the ALJ to reject Dr. Dennis's evaluations based on subjectivity.

With regard to consistency, the only possible explanation provided by the ALJ in assessing Dr. Dennis's 2015 evaluation is the ALJ's statement that Hardy "had no treatment for any mental health issue for the next two years." (DN 9, at PageID # 56.)  The lapse in mental health treatment is not necessarily inconsistent with Dr. Dennis's evaluation, especially considering that Dr. Dennis noted that at the time of the examination, Hardy was "not currently in mental health treatment." (*Id.*, at PageID # 593.)  Moreover, subsequent mental health evaluations, including Dr. Dennis's 2018 consultative evaluation, did not contradict his findings.  (*See id.*, at PageID # 656-58, 778, 78.)  The ALJ cited to no other evidence that was inconsistent with Dr. Dennis' 2015 findings. Therefore, the ALJ erred in failing to explain how she considered the consistency factor in deeming Dr. Dennis's 2015 evaluation unpersuasive.

With respect to Dr. Dennis's 2018 evaluation, the ALJ merely stated that it contained "contradictions to other psychological reports." (*Id.*, at PageID # 57.)  The ALJ did not indicate what the contradictions were or which psychological reports disputed them.  The Commissioner suggests that the ALJ was referring to Dr. Herner's 2010 evaluation, specifically the finding based

on Hardy's performance on the Rey Test that Hardy did not apply himself during testing.  (DN 18, at PageID # 908.)  Hardy points to guidance by the Social Security Administration in a 2013 Congressional Response Report, which stated that the Administration does not use symptom validity tests in its disability determinations because it stated these tests have limited value in proving malingering.  (DN 13, at PageID # 876-77.)  *See* OFFICE OF THE INSPECTOR GEN., SSA, A–08–13–23094, *Congressional Response Report: the Social Security Administration's Policy on Symptom Validity Tests in Determining Disability* Claims 3–4 (September 2013), available at http:// oig.ssa.gov/sites/def ault/files/audit/full/pdf/A–08–13–23094.pdf.  Hardy also notes that Dr. Herner's evaluation stated that research has shown both that the Rey Test is indicative of malingering and indicative of neuropsychological impairment.  (*Id.*, at PageID # 877.) Hardy also argues that Dr. Herner did not conclude from the Rey Test that Hardy was a malingerer, but rather that the results were a factor in Dr. Herner's diagnosis of anti-social personality disorder.  (*Id.*, at PageID # 876.)  The undersigned notes that this guidance was not in place at the time of Dr. Herner's evaluation, and it was in place at the time of both of Dr. Dennis's evaluations.

Even if the Commissioner is correct that the ALJ was referring to Dr. Herner's evaluation in mentioning contradictions to Dr. Dennis's 2018 evaluation in "other psychological reports," that doesn't account for the ALJ's mention of plural "reports" .  The ALJ may have been referring to the most recent state agency evaluation by Dr. Shambra Mulder, Ph.D. who concluded that Dr. Dennis's opinion was "not supported by objective findings and is less persuasive."  (DN 9, at PageID # 176.)  The ALJ did generally assign "significant weight" to the most recent state agency evaluations, (*Id.*, at PageID # 57), but she did not explicitly cite these evaluations as persuasively contradicting Dr. Dennis's 2018 evaluation nor did she reconcile their conclusion that Dr. Herner's evaluation was not indicative of Hardy's current functioning with the weight she assigned to Dr.

Herner's evaluation.  (*See id.*, at PageID # 173.)  It would be pure speculation by the undersigned to assume that the ALJ relied on either Dr. Herner's evaluation or the state agency evaluations in deeming Dr. Dennis's 2018 evaluation inconsistent because the ALJ was silent as to which "other psychological reports" she considered and what "contradictions" invalidated Dr. Dennis's evaluation.  Because the ALJ failed to indicate what records she relied on in finding that Dr. Dennis's 2018 evaluation was inconsistent with other reports, the undersigned cannot conduct a meaningful review of whether substantial evidence in the record substantiates the ALJ's assignment of weight to Dr. Dennis's opinions.

In sum, the undersigned finds that the ALJ's assessment of Dr. Dennis's evaluations did not properly address the supportability and consistency factors. The undersigned further finds that the error was not harmless.  *See Butcher v. Comm'r of Soc. Sec.*, No. 1:20-CV-01230-DCN, 2021 WL 1878120, at *19 (N.D. Ohio May 3, 2021), report and recommendation adopted, No. 1:20 CV 1230, 2021 WL 1858367 (N.D. Ohio May 10, 2021) (finding that the ALJ's failure to articulate supportability and consistency factors in rejecting medical opinion that was consistent with the record was not harmless).  The undersigned therefore will recommend that the case be remanded under sentence four of 42 U.S.C. § 405(g) to give the ALJ an opportunity to conduct the proper evaluation of all of the medical opinion evidence and address the errors at step three and in the RFC analysis.

### 2.  Other Evidence

Hardy's Fact and Law Summary raises several discreet examples of evidence that he argues the ALJ either failed to consider or improperly considered in steps three and four of the five step sequential analysis.  (DN 13, at PageID # 870-82.)  Because these arguments only seek to have the Court reweigh the evidence considered by the ALJ, none of them is persuasive.  *See Longworth v.*

*Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.") (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).   The undersigned briefly addresses the arguments below.

### 1.   Primary Care Treatment Records

The record indicates that Hardy received primary care treatment from Dr. James D. Charasika ("Dr. Charasika ") beginning in June 2017.  (DN 9, at PageID # 603; *see id.* at PageID # 600-48, 742-74; 790-860.)  At step four of the five step sequential analysis, the ALJ noted the despite Hardy's alleged mental limitations, "he has reported no mental issues to his primary care provider."  (*Id.*, at PageID # 57.)  The undersigned's review of these records indicates that they are generally consistent with the ALJ's assertion, other than Hardy's reporting anxiety during a July 25, 2017 visit and anxiety and depression during a January 24, 2021 visit.  (*See id.*, at PageID # 666, 839.)

Hardy argues that the ALJ erred in citing his *primary care* medical treatment records as inconsistent with his alleged *mental* limitations.  (DN 13, at PageID # 882.)  Hardy states that Dr. Charasika did not treat Hardy for mental health issues.  (*Id.*)  Hardy notes that the decision did not mention that on January 23, 2018, Dr. Peter Urda ("Dr. Urda") performed a consultative physical examination of Hardy and noted that Hardy "may need psychological evaluation."  (*Id.*)  Hardy asserts that the ALJ did not explain the significance of the lack of discussion of mental health issues with a primary care professional on the credibility of Hardy's alleged mental limitation. (*Id.*)  In response, the Commissioner argues that omitting Dr. Urda's suggestion for a psychological evaluation was not erroneous because "the ALJ is not required to address every piece of evidence."

(DN 18, at PageID # 908) (citing *Coppage v. Berryhill*, 2017 WL 8640926 at *4 (W.D.Ky August 11, 2017).  The Commissioner asserts that the ALJ specifically didn't need to address Dt. Urda's note because it does not constitute a medical opinion under 20 C.F.R. § 416.913(a)(2)(ii).  (*Id.*) Finally, the Commissioner argues Hardy has not shown that Dr. Urda's suggestion for a psychological evaluation supports a more restrictive RFC finding.  (*Id.*)

The Commissioner misses Hardy's point.  The issue isn't whether the ALJ was required to consider Dr. Urda's suggestion as medical opinion evidence.  Rather, Hardy points to Dr. Urda's assessment to undermine the proposition that *if* Hardy was suffering from disabling mental limitations, *then* Hardy would have addressed his mental issues with his primary care physician. (*See* DN 13, at PageID # 82.)  This proposition is undermined if primary care physicians—such as Dr. Urda and Dr. Charasika—are not ordinarily expected to assess patients' mental health issues. However, the ALJ did not assume that Dr. Charasika, as a primary care physician who was not providing mental health treatment, was expected to mention Hardy's mental impairments, if any existed, in her treatment notes.  The ALJ merely noted that Hardy both alleged in social security proceedings that he suffers from disabling mental impairments and "reported no mental health issues to his primary care provider."  (DN 9, at PageID # 57.)  Put another way, Hardy said something was the case to one audience and said the opposite was the case to another audience. Contrary to Hardy's characterization of Dr. Charasika's treatment records as simply "not mentioning" his mental health issues, (DN 13, at PageID # 882), the records show that other than Hardy's reporting anxiety during a July 25, 2017 visit and anxiety and depression during a January 24, 2021 visit, Hardy consistently reported "No anxiety, No depression, No mania, Not suicidal, Not delusional, No hallucinations, No behavioral changes, No change in personality, No attention disorder, No memory difficulties, No irritability, No substance abuse."  (DN 9, at PageID # 604,

666, 689, 747, 794, 817, 839.)  The ALJ adequately explained the inconsistency by indicating that Hardy's allegations conflict with his reporting to his primary care physician that he experienced no serious mental health issues and citing to relevant treatment records.  (*See Id.*, at PageID # 57.) Therefore, the ALJ did not err in finding his primary care medical treatment records were inconsistent with his alleged mental limitations.

### 2.  Hardy's Efforts in Obtaining Mental Health Treatment

The degree of treatment that a plaintiff has sought for an allegedly disabling personality disorder is a factor that may be considered in assessing the extent of his symptoms.  20 C.F.R. § 416.929(c)(3)(v).  *See Lester v. Soc. Sec. Admin.*, 596 Fed.App'x. 387, 389 (6th Cir. 2015).  The listing recognizes that "[w]ith treatment, [a claimant] may not only have [his] symptoms and signs reduced, but may also be able to function in a work setting."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The listing also recognizes that in some cases, "treatment may not resolve all of the limitations that result from [a claimant's] mental disorder."  *Id.*

Hardy argues that the ALJ erred in relying on Hardy's limited effort to pursue mental health treatment and noncompliance with prescribed mental health treatment without considering why Hardy resisted treatment.  (DN 13, at PageID # 871-74.)  Hardy argues that considering his noncompliance with treatment contravened guidance by the Sixth Circuit describing it a "questionable practice to chastise one with a mental impairment for exercise of poor judgment in seeking rehabilitation."  *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989).

An ALJ may properly consider a claimant's failure to seek treatment as casting doubt on the alleged severity of the claimant's impairment.  *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004).  However, when the claimant suffers from a mental impairment, his failure to seek mental health treatment "should not be *a determinative factor* in a credibility assessment"

relating to the severity of his impairment.  *Id.* (emphasis added, quoting *Blankenship*, 874 F.2d at 1124)).

Here, the record includes a November 11, 2018 social security document soliciting a list of current medications on which Hardy reported that he was "refusing Medication due to drug addiction – and they want to prescribe me addictive drugs . . . I don't trust it."  (DN 9, at PageID # 382.)  During the hearing, Hardy similarly testified that the reason he stopped treatment in a rehabilitation program in 2018 was because he was recommended medication, explaining: "I done been in the penitentiary from taking pills, and I just feel like pills just do something to me, like they just tear me apart."  (*Id.*, at PageID # 130.)  Hardy also consistently refused recommended medications while incarcerated in 2011.  (*Id.*, at PageID # 485-510.)  Hardy cites these examples as indicators that his noncompliance with treatment is consistent with symptoms of his personality disorder, which is characterized by enduring, inflexible, maladaptive, and pervasive patterns of behavior.  (DN 13, at PageID # 871-873.)  However, these examples show that his decision to consistently decline medications is motivated by his history with drugs and not his mental impairment.  (DN 9, at PageID # 130, 382.)  In contrast, the record shows that Hardy actively sought out mental health treatment on numerous occasions and that medical professionals have observed Hardy's demeanor as cooperative and appropriate.  (*Id.*, at PageID # 401, 405, 593, 606, 651, 695, 734.)  Thus, the evidence does not "suggest[] that [Hardy]'s mental condition somehow hindered him from seeking examination or treatment."  *Strong*, 88 F. App'x at 846.  More importantly, is not apparent from the decision that the ALJ treated Hardy's failure to seek treatment as a determinative factor to her analysis.  Therefore, the undersigned finds that the ALJ did not err in considering Hardy's failure to seek mental health treatment.

### 3.   Victoria Brown Function Report

Hardy argues that the ALJ should have considered statements by Hardy's mother, Victoria Brown, in an October 12, 2015 third-party function report when the ALJ rated Hardy's functional limitation in interacting with others under paragraph "B".  (DN 13, at PageID # 872.)   In the decision, the ALJ addressed the function report as follows: "In addition, the undersigned did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c) and 416.920b(c), which includes but is not limited to a Third Party Function Report from the claimant's mother." (DN 9, at PageID # 57.)  Hardy did not raise any argument disputing the ALJ's determination with respect the function report.  Therefore, the undersigned deems that issue waived.  *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); *Rice v. Comm'r of Soc. Sec.*, 2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion).

### 4.   Hardy's Educational History

At steps three and four of the five step sequential analysis, the ALJ considered Hardy's inconsistent statements about his educational history in assessing his alleged intellectual limitations.  (DN 9, at PageID # 54, 56-57.)  Hardy does not dispute that the record is inconsistent with regard to Hardy's matriculation but argues that these inconsistencies don't undermine Hardy's credibility.  (DN 13, at PageID # 881.)  Hardy addresses the evidence as follows:

> A close look at the record will reveal that inarticulately Hardy was saying that although he was put in tenth grade, he did not have that ability. In the hearing Hardy testified that while in prison he was put in classes and the ALJ stated this may have been an equivalency but that his grade level is confusing. T 69-70. He told the correctional facility doctor he completed the 10th grade but was in learning and behavioral disorder classes, performed terribly in school and ran away from school . . . He told the therapist at Centerstone that the

last grade "he completed" was in elementary school . . . The record as a whole shows that Hardy was stating that his grade number was higher than his ability.

The ALJ considered the evidence Hardy cites in the decision.  (DN 9, at PageID # 54, 56-57.)  Hardy does not contend that the ALJ misstated the evidence or that the evidence does not support the ALJ's findings about Hardy's ability to understand and respond to instructions.  Rather, he argues that the same evidence the ALJ considered could support a different conclusion.  While that may be the case, it is not a permissible basis for reversal.  *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) ("In reviewing the ALJ's decision, we 'may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility.'" (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

### 5.  Longitudinal Evidence of Hardy's Impairment

Hardy argues that in evaluating Hardy's paragraph "B" criteria, the ALJ failed to follow the procedures set forth in the listing.  (DN 13, at PageID # 872-74.)  Specifically, Hardy alleges that "the record demonstrates a failure to consider all the evidence necessary to complete the required longitudinal history of the Antisocial Personality Disorder."  (*Id.*, at PageID # 872.)  Under the listing, "[l]ongitudinal medical evidence can help [the ALJ] learn how [the claimant] function[s] over time, and help [the ALJ] evaluate any variations in the level of [the claimant] functioning."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Hardy highlights evidence in the record that he contends supports a finding of extreme limitations under the listing.  (*See* DN 13, at PageID # 872-79.)  Although Hardy details the specific evidence, he summarizes it as showing Hardy "never holding a job, imprisonment with most of the time in solitary confinement, suspiciousness and paranoia, disregard for the rights of others, irritability, fights, isolation from strangers, rejection of authority."  (*Id.*, at PageID # 879)  Hardy

argues that the ALJ did not sufficiently explain how this longitudinal evidence "is discounted by his limited relationship with providers, a few friends and one short hearing appearance." (*Id.*, at PageID # 872.)

The undersigned finds that the ALJ's analysis at step three was legally adequate, aside from the failure to properly consider the medical opinion evidence, discussed *supra*. The Sixth Circuit has rejected a heightened articulation standard for the ALJ at step three. *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 411 (6th Cir. 2006). In *Bledsoe*, the Sixth Circuit held that the ALJ is under no obligation to spell out "every consideration that went into the step three determination." *Id.* at 411. Most, if not all, of the longitudinal evidence Hardy illustrates was either cited to in the decision or explicitly discussed in the decision or hearing. Therefore, the undersigned finds that the ALJ did not fail to consider the "[n]eed for longitudinal evidence" at step three. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

## III.   RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be **VACATED AND REMANDED** for further proceedings consistent with this opinion.

Colin H Lindsay, Magistrate Judge
United States District Court

July 22, 2021

cc:  Counsel of record

**Notice**

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.*; *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).